IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ROBERT STEPHENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 6:15-cv-44 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## REPORT AND RECOMMENDATION

Plaintiff Robert Stephens ("Stephens") challenges the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act (the "Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Stephens asserts that the Administrative Law Judge ("ALJ") erred by failing to find his hernia and mental impairments to be severe impairments. Stephens also submitted additional evidence to the court that he requests be considered as part of the administrative record in this case. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Stephens' Motion for Summary Judgment (Dkt. No. 26) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 27).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Stephens failed to demonstrate that he was disabled under

the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Stephens filed for DIB and SSI on February 5, 2014, claiming that his disability began on March 31, 2000,[2] due to "haemophilus influenza,[3] back /neck pain, left side issues, lump on foot, stuff in throat, run over by a truck 1999, chronic constipation, depression, seizures." R. 193–97. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 103–10. On May 12, 2015, ALJ Karen Wiedemann held a video hearing to consider Stephens' disability claim. R. 36–80. Stephens was represented by an attorney at the hearing, which included testimony from vocational expert Lindsay Klam. Id.

On July 16, 2015, the ALJ entered her decision analyzing Stephens' claim under the familiar five-step process[4] and denying Stephens' claim for benefits. R. 17–27. The ALJ found

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2),.

[2] Stephens' date last insured is December 31, 2006. R. 193. Thus, he must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[3] Haemophilus infleunzae ("Hib disease") is a serious illness caused by the bacterial Haemophilus influenza type b. Babies and children are most at risk for Hib disease. It can cause lifelong disability and be deadly. See www.cdc.gov/vaccines/parents/diseases/child/hib-basics-color.pdf.

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the

2

that Stephens suffered from the medically determinable impairments of bipolar disorder, depression, delusional disorder, constipation, and history of hernia. R. 20. The ALJ found that Stephens' medically determinable impairments either alone or in combination were not severe, and thus, that he is not disabled under the Social Security Act. R. 20–27. Stephens submitted additional medical records to the Appeals Council for consideration, and on October 7, 2015, the Appeals Council denied Stephens' request for review (R. 1–6). This appeal followed.

## ANALYSIS

Stephens argues that the ALJ erroneously concluded that his hernia and mental impairments were not "severe" impairments, and thus, he was not disabled under the Act. Stephens bears the burden of proving that his hernia and mental impairments are severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. §§ 404.1521(a), 416.921(a). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)). Under 20 C.F.R. § 404.1523, the ALJ must consider the combined effect of all of a claimant's impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. Additionally, an impairment

---

requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

must last, or be expected to last for a continuous period of at least twelve months to be considered "severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

Stephens testified at the administrative hearing that he was a petroleum engineer until he had a motor vehicle accident in 1999, when he sustained a head injury that caused his psychological issues. R. 49–70. The record reflects that Stephens did work steadily until 1999 and was in a motor vehicle accident, but does not reflect that he suffered a head injury from the accident. Rather, his post-accident records reflect mainly complaints of back and neck problems. R. 21. In 2001, Stephens was incarcerated for robbery with a firearm and attempted kidnapping. He was initially found incompetent to stand trial, but was restored to competency after four months, and served twelve years in prison. R. 329–331, 336. Stephens was released in 2014 (R. 336), and sought minimal mental health or medical treatment thereafter.

As the ALJ recited in great detail, Stephens' records reflect that he has been diagnosed over the years with multiple mental impairments, including depression, bipolar disorder, adjustment disorder with mixed anxiety, and antisocial personality disorder. R. 21–26. However, the records do not support Stephens' claim that he suffers from significant functional limitations arising from those conditions. Stephens had no mental health treatment prior to 2001, aside from sleep issues. After his arrest, Stephens was found to be incompetent to stand trial, and was admitted to the Eastern State Hospital to be restored to competency. R. 329–31. He was diagnosed with bipolar disorder, depressed type, treated with medication, and passed his next competency evaluation. Id.

Prison treatment records from 2002 through 2014 reflect few complaints or treatment for mental impairments. R. 340–423, 435–554, 635–90, 697–700. In 2010, Kenneth Bond, Ph.D. completed a mental assessment of Stephens while he was a prisoner at the Oklahoma City Community Correctional Center. R. 690. Stephens reported that he had not taken psychotropic

4

medication since 2003. Id.  During the examination, Stephens was oriented times four, his speech was coherent, linear and relaxed. His thought content was overtly focused on physical, medical complaints and persecutory content. Stephens was relaxed, his affect was slightly cautious but he was non-anxious.  Dr. Bond diagnosed delusional disorder somatic type, rule out delusional disorder persecutory. Id.  Dr. Bond noted no apparent mood disturbance.  Stephens denied the need for a medication consult or continuing mental health services, although Dr. Bond noted that he would continue to monitor Stephens for behavioral difficulties or mood disturbance. Id.

Mental status notes from October 2011 through February 2012 reflect that Stephens was neat in appearance and cooperative, and had normal affect, speech, perception, and thought content.  He was oriented to person, place and time, and his concentration was intact. R. 676–81.

Stephens was released from prison on January 27, 2014. R. 336.  He went to the hospital on March 24, 2014, for dizziness, weakness and generalized body aches related to celiac disease. R. 577.  His physical examination was normal, and he was cooperative with appropriate mood and affect. R. 578.  In the discharge summary, the treatment provider noted, "most of his evaluation looked fairly normal.  In the middle of the night, however, the patient went AMA before we could do any further workup.  He did not sign out.  He simply left against medical advice." R. 562.

On May 20, 2014, consultative examiner Joy Terrell, Ph.D., examined Stephens. R. 585–88.  Dr. Terrell found that Stephens could understand, remember and carry out instructions for simple and complex tasks; can maintain attention for two-hour blocks of time; can respond appropriately to supervision and interact appropriately with co-workers; can sustain effort and persist at a normal pace over the course of a 40-hour work week; and can tolerate the stress and pressure associated with daily work activity and demands. R. 588–89.  Dr. Terrell concluded that Stephens "does not appear to currently meet criteria for a mental disorder based on reported

information and presentation. He did not present as having a mood disorder or psychosis. He needs effective treatment for his medical ailments. There were concerns with credibility and cooperation due to repeated evasiveness in answering certain questions and some contradictions with recorded information. There were no issues with motivation." R. 588.

On June 25, 2014, Adeboye Francis, M.D., performed a physical and mental consultative examination of Stephens. R. 591–96. Stephens was pleasant and cooperative; his behavior was calm and appropriate; his speech was normal; his thought process was goal directed; his affect was inappropriate and flat and his mood was largely depressed. R. 595. Dr. Francis diagnosed bipolar disorder and recommended an evaluation by a psychiatrist. R. 596. He also diagnosed chronic neck and low back pain, constipation, gluten sensitivity, left heel pain and probable seizure disorder. Id. Dr. Francis determined that Stephens' cognitive skills and concentrations are mildly impaired, but he is able to work at appropriate jobs in the light to moderate exertional level. Id.

On July 7, 2014, state agency medical consultant Julia Wood, Ph.D., reviewed Stephens' records and determined that he did not suffer from a severe mental impairment. R. 87–89. Specifically, Dr. Wood found that Stephens' diagnoses of schizophrenia, bipolar disorder, adjustment disorder and personality disorder did not restrict his activities of daily living, or cause difficulties in social functioning, concentration, persistence or pace. R. 88.

On January 10, 2015, Stephens presented to the emergency room and was diagnosed with chest pain, depression, personality disorder and an inguinal hernia. R. 606, 609. He was told to follow up with general surgery for hernia repair. R. 612.

After the ALJ's decision on July 16, 2015, Stephens submitted additional medical records reflecting that he was discharged from the emergency room on February 23, 2015, with

6

instructions to follow up with a physician about his inguinal hernia.[5] R. 709–11. Stephens also sought treatment with John Daniel, M.D. on two occasions (February and April 2015) complaining of inguinal hernia and tremors. R. 704–07. He was diagnosed with a left inguinal hernia, constipation, psychiatric disorder and tremors. R. 705, 707. Dr. Daniel referred Stephens to general surgery for his left inguinal hernia and instructed him to avoid lifting, pulling or straining. R. 707. He also noted that Stephens refused referral to psychiatrist and refused to take medication for his mental impairments. Id.

Stephens also submitted records from Horizon Behavioral Health dated April through September 2015. On April 17, 2015, Stephens presented with disorganized thought process with delusions, impaired cognition, intact orientation, average intelligence, moderately impaired judgment, and poor insight. R. 715. Elizabeth Wilson, LPC, determined that Stephens needed intensive outpatient mental health services. R. 717. On April 24, 2015, Stephens was assessed for possible inpatient services, but did not meet the criteria for inpatient psychiatric hospitalization. He was able to care for his basic needs and had secure housing. R. 720. On June 8, 2015, Stephens' mental exam reflected a stable affect, normal speech, stable mood, and logical, goal directed thought process. He had no delusions, normal cognition, average intelligence, intact memory, intact orientation, appropriate judgment and insight, normal reasoning, intact attention and concentration, and intact executive functioning. R. 725.

---

[5] When a claimant has submitted additional evidence to the Appeals Council, and the Appeals Council considered that evidence, the court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's findings. Wilkins v. Sec'y., Dep't. of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991). Here, the Appeals Council considered the additional evidence submitted by Stephens, but found that the information did not provide a basis for changing the ALJ's decision. R. 1–6. Likewise, I will consider the evidence as a whole, including the evidence submitted to the Appeals Council, in my analysis of whether the ALJ's conclusions regarding the severity of Stephens' impairments are supported by substantial evidence.

7

The ALJ's conclusion that Stephens' mental impairments and hernia are not "severe" impairments is supported by substantial evidence in the record. With regard to his mental impairments, ample evidence supports the ALJ's conclusion that Stephens had no limitation in the four functional areas of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation. R. 26–27. Despite multiple diagnoses of various mental impairments, there is little evidence in the record of functional limitations arising from those impairments. Medical diagnoses without any accompanying functional limitations do not support a finding that a particular medical issue is disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). The records reflect that Stephens made few complaints of and received little treatment for his mental health issues since 2002. Indeed, Stephens frequently refused additional counseling and/or medication recommended by his treating providers. R. 562, 596, 690, 707. Additionally, Stephens did not allege any mental difficulties with performing daily activities, social functioning or attending and concentration in his application for benefits. R. 236–41.

Further, all of the physicians who gave an opinion as to the functional limitations arising from Stephens' mental impairments concluded that he did not suffer from severe mental impairments, and had at most mild restrictions with daily activities and no restrictions with social functioning, concentration, persistence or pace and no episodes of decompensation. R. 88, 588–89, 596. Thus, substantial evidence supports the ALJ's conclusion that Stephens' mental impairments do not significantly limit his ability to work and consequently, are not severe.

With regard to Stephens' hernia, he first sought treatment for a hernia in 2009, which was successfully repaired in January 2010. R. 540. Physical examinations thereafter reflected a soft and nontender abdomen. R. 535, 536, 538. Stephens did not complain of a hernia again until January 2015, when he visited the emergency room and was diagnosed with an inguinal hernia.

8

R. 612. The records submitted to the Appeals Council reflect that Stephens continued to complain of pain related to the inguinal hernia, but did not undergo the recommended surgery to repair it. R. 704–11.

An impairment must last, or be expected to last for a continuous period of at least twelve months to be considered "severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Stephens' prior hernia in 2009 was successfully repaired shortly after he first sought treatment, and thus, was not an ongoing impairment that lasted for a continuous period of at least twelve months. Likewise, the inguinal hernia diagnosed in January 2015 is a condition that can and should be repaired with surgery, and did not, prior to the ALJ's opinion dated July 16, 2015, last for a continuous period of at least twelve months. Thus, substantial evidence supports the ALJ's conclusion that Stephens' hernia is not a "severe" impairment.

I remain mindful of the substantial evidence standard in my review. Under this standard, the issue is not whether the ALJ could have found Stephens' hernia or mental impairments to be severe. Rather, the issue is whether substantial evidence—more than a scintilla—in the record supports the ALJ's conclusion. Here, the ALJ's step two analysis is supported by substantial evidence and should not be disturbed.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Stephens' motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

9

objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: January 30, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge